## WILLIAM D. NICHOLS

### *v.*

### JOHN M. MURPHY *et al.*

*Filed at Ottawa January 22, 1891.*

1. PARTNERSHIP—*contract of partnership—as to what property rights pass to the firm.* By an agreement for a partnership between A and B for the manufacture of windmills, the former agreed "to put into the firm of A & B, for their full, free and exclusive use during the life of the co-partnership, all his rights, title and interest in and to all the letters patent in windmills which he now has or may hereafter have :" *Held,* that the right transferred by A to the partnership was only the use of the patents during the life of the partnership, and that on dissolution of the firm the patents did not constitute assets or resources of such firm.

2. Afterward, A, B and C formed a new partnership, and their written agreement therefor recited, that "the said A and B have contributed jointly to the capital stock of said co-partnership the assets and resources of the late firm of A & B, the property and resources being mentioned in the inventory marked 'A' and the schedule marked 'B,' hereto attached." In schedule "B" was enumerated, "Patents and business, $6000," after which was added, "the above patents include all patents and improvements on the windmills, feed-mill, and all other machinery and implements used in connection with said manufactory, and on articles manufactured in said business:" *Held,* that the patents of A, being his individual property, did not thereby pass to the new firm, but only the use during the existence of the firm.

3. The agreement also contained the following clause : "And during said time no right, title or interest, nor any permit or license, shall be sold, given or transferred to any other person or persons, or corporations, to manufacture or sell under the said patents transferred to the said partnership, as mentioned in schedule 'B :'" *Held,* that the limiting of the prohibition of sales and of the patents to the term of the partnership, was an admission that at the end of the term A might sell, etc., said patents.

4. CHANCERY—*intervening rights—whether proper to be considered.* On bill to wind up and settle a partnership business, under which a receiver had been appointed, the partnership property and assets were ordered to be sold by the receiver, and the same were sold, and the sale confirmed. Afterward, the purchaser filed his intervening petition to confirm his title to certain patents claimed to be partnership assets,

as against one of the partners, who claimed they were his individual property, and the court decreed that the patents passed by the sale : *Held,* there was no necessity or authority for filing such petition, and therefore the decree thereon was erroneous.

WRIT OF ERROR to the Appellate Court for the Second District ;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. ISAAC G. WILSON, Judge, presiding.

William D. Nichols filed his bill in chancery, in the circuit court of Kane county, on the 16th of May, 1887, wherein he alleged, among other things, that he had obtained certain patents for improvements upon windmills, which expire in 1890, 1894 and 1898, which were of great value, and were owned by him and in his possession; that afterwards, and in December, 1883, he entered into partnership with John M. Murphy, for the manufacture and sale of windmills, at Elgin, in Kane county, and agreed to put into said firm the use of his patents, only during the continuance of the partnership; that in 1884 that partnership was dissolved and the partnership of Nichols, Murphy & Geister was formed, the firm of Nichols & Murphy putting into said new firm only the assets and resources of the former firm of Nichols & Murphy, which included only the use of said patents during the continuance of the firm. The bill then avers certain acts of Geister and Murphy in ousting Nichols from the firm, and the dissolution of the partnership, setting forth also the amount of the assets of the firm and its liabilities, and averring, that at a short time prior to filing the bill, Murphy and Geister were for the first time claiming that the firm, instead of having only a *use* of the patents, *owned* the patents, and that Murphy and Geister then requested Nichols to convey the patents to the firm, which Nichols declined, insisting that the new firm had only the same interest in his patents which the firm of Nichols & Murphy had, which was simply the right of the use of them during the existence of the firm, and that he owned the title to the patents, which had

become very valuable, and that upon Nichols refusing to convey such title to the new firm, Murphy and Geister published a notice of the dissolution of the partnership, and refused to recognize Nichols as a member of the firm, or to make any settlement with him, unless he would concede that the title to said letters patent was in said firm. The bill prays for the settlement of the partnership affairs, for the appointment of a receiver, etc., and that complainant may be decreed to be the absolute owner of said patents, free from all claims of said co-partnership, and to have his *pro rata* share of the profits, etc.

Upon the filing of this bill, the defendants, Murphy and Geister, filed their answer, which was also made by them a cross-bill, setting up, with regard to the patents, that the firm of Nichols, Murphy & Geister, by the terms of the articles of co-partnership and the schedules thereto attached, owned the patents, and by way of affirmative relief they ask that the titles of the patents be decreed to be in them, or in the purchaser of the assets of the firm, etc.

Upon the filing of the bill and answer, a motion for the appointment of a receiver was heard by the court, and a receiver was appointed to take charge of all of the assets of the firm. Subsequently the receiver came into court and asked the order and direction of the court as to what course to pursue with reference to the assets of the firm, and thereupon the court ordered the receiver to sell all the property and assets of the firm, including the good will of the business, and the interest of Nichols, Murphy and Geister in any and all patents belonging to said firm, at public auction, to the best bidder, on the 16th of July, 1887; that all the same shall be offered as a whole, subject to the liabilities of the co-partnership, and the receiver to receive no bids therefor for less than $27,000, the purchaser at said sale to assume and agree to pay all the partnership debts of said firm, and give the receiver approved personal security for the payment thereof; that the receiver advertise the sale, etc., the sale to be made upon the following

terms: Five per cent of the bid to be paid before the close of the sale, one-third of the balance, in cash, upon the confirmation of the sale by the court, and one-half of the balance in six months and one-half in twelve months from the date of the sale, the interest at six per cent, secured by note, etc.; the receiver, by agreement of parties, was to make report in vacation.

· Under and pursuant to this decree, the property described therein was sold to one D. R. Hartwell, for the Elgin Wind-Power and Pump Company, for the sum of $27,000, subject to the liabilities of the said firm. Hartwell thereupon, for said company, paid the receiver $1350 in cash, and subsequently paid him one-third of the balance,—$8550,—and notes were executed by said company for the residue. The receiver reported the sale to the court, and it was approved by the court, the decree reciting as follows: "And the said Nichols, by Charles Wheaton, his solicitor, and the said Geister and the said Murphy, by R. N. Botsford, their solicitor, being present, and offering no objection to the confirmation and approval of said report, and consenting thereto, and it appearing to the court that said sale was duly advertised, * * * and that said sale was in all things fairly and openly conducted, and that the purchaser of said property has in all things complied with the terms and conditions of said sale, it is therefore ordered and decreed that said sale be and the same is, in all respects, fully ratified and confirmed by this court. It is further ordered and decreed that the Elgin Wind-Power and Pump Company, having become the purchaser at said sale, be and the same is hereby vested with all of the * * * and the interest of Nichols, Murphy and Geister in any and all patents belonging to said firm, and that the said Elgin Wind-Power and Pump Company be invested with the title thereto as of the 16th day of July, A. D. 1887, the date of said sale." The receiver made a final report, showing the collection of the money pursuant to the sale, and the disbursement thereof

pursuant to the order of the court, and on the 7th of January, 1888, the court made an order approving the final report of the receiver, and discharging him.

On the 16th day of July, 1888, the Elgin Wind-Power and Pump Company obtained leave of the court to file their supplemental bill, intervening in said cause, in which it is, among other things, alleged, that on or about the 28th day of June, 1887, the said cause came on for hearing, on the petition of the receiver for directions as to what course to pursue with reference to the assets of said firm of Nichols, Murphy & Geister, and that upon the hearing of that petition the court found that the property of said co-partnership, exclusive of patents, was of the value of $8000; that there was due to said co-partnership, on open accounts, about $18,000; that the receiver had, in cash, on account of said partnership, $1750; that there was due to the co-partnership about $25,000 in notes and bills, and that the liabilities of said partnership were about $16,000. Thereupon the court decreed that said receiver sell all of the right, title and interest of said firm, and each of them, in all the stock, manufactured and unmanufactured, tools, implements, machinery, fixtures, accounts, choses in action, notes, drafts, bills receivable, and all assets belonging to said co-partnership, together with the good will of the business and the interest of said firm in all patents belonging to said firm, at public auction, in one body, for not less than $27,000, and the purchaser to assume and agree to pay all indebtedness of said firm; that on the 16th of July, 1887, the receiver, in pursuance of said decree, did sell all of said property, and this intervener became the purchaser of said property and good will of the business, together with all interest of said firm in and to all patents belonging to said firm, paying therefor upwards of $43,000, by complying in all respects with the terms of said sale; that on the 9th day of August, 1887, the receiver reported said sale to this court, and it was confirmed by the court, and decreed from thenceforth this intervener should be

the owner of all the assets of said firm, together with the good will of said business and all the interest of said firm in all patents belonging to said firm, and alleging that the intervener then took possession of said property, and has ever since used and enjoyed the same, and that as part and parcel of the assets of said firm which he had bought at said sale, were the patents described in complainant's bill of complaint, which it alleges then belonged to said firm by reason of an equitable assignment and sale of the same by said Nichols. The prayer is, "that the patents may be decreed herein to belong to this intervener, as the purchaser under the sale and confirmation hereinabove set forth."

Nichols answered, putting in issue the material allegations of the petition, and particularly denying that the firm of Nichols, Murphy & Geister owned any patents, that the court ordered any patents to be sold, or that any patents were in fact sold, pursuant to any order of court, and concludes by denying the jurisdiction of the court to grant the relief prayed. On a subsequent day Nichols moved to set aside the order allowing the intervening petition to be filed, but this was overruled by the court.

On final hearing the court decreed that the articles of co-partnership of Nichols, Murphy & Geister, and the exhibits thereto attached, transferred to and vested in said firm all of the equitable right, title and interest of W. D. Nichols, and of the former co-partnership of Nichols & Murphy, in and to the said patents, and that the Elgin Wind-Power and Pump Company became vested by such receiver's sale with all such right, title and interest in said patents, and that all the right, title and interest of the said Nichols in and to the said patents, and each of them, be adjudged and confirmed in the said Elgin Wind-Power and Pump Company, and that the exclusive right, use and benefit of said patents, and each of them, be declared and adjudged to be in the said Elgin Wind-Power and Pump Company, as against the said Nichols and the said firm, and

that Nichols make, assign and deliver to the said Elgin Wind-Power and Pump Company, by proper deeds and assignments, all the legal title and interest he now has, owns or controls in the said patents, and each of them. Nichols appealed from that decree to the Appellate Court for the Second District, and that court, by its judgment, affirmed the decree of the circuit court. The present appeal is from the last named judgment.

Mr. CHARLES WHEATON, for the plaintiff in error.

Messrs. BOTSFORD & WAYNE, and Messrs. SHERWOOD & JONES, for the defendants in error.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

By the express terms of the written agreement between Nichols and Murphy, Nichols only agreed "to put into the firm of Nichols & Murphy, for their full, free and exclusive use, during the life of the co-partnership, all his rights, title and interest in and to all the letters patent in windmills which he now has or may hereafter have." Comment can not make the meaning of this language more apparent than do the words themselves. The right transferred to the partnership is, plainly and palpably, only to use the patents during the life of the partnership. The written agreement between Nichols, Murphy and Geister, to form a new partnership, employs this language in respect to the patents: "And * * * the said Nichols and Murphy have contributed, jointly, to the capital stock of said co-partnership the assets and resources of the late firm of Nichols & Murphy, the property and resources being mentioned in the inventory marked 'A' and the schedule marked 'B,' hereto attached." The character and extent of interest is clearly described by the words, "the assets and resources of the late firm of Nichols & Murphy," and the property in which that interest is, will be found described in inventory marked "A" and the schedule marked "B." Thus, in sched-

ule "B" is enumerated, "Patents and business, $6000," after which it is added: "The above patents include all patents and improvements on the windmills, feed-mill, and all other machinery and implements used in connection with said manufacturing, and in articles manufactured, in said business." And so having determined that the interest of the partnership of Nichols & Murphy in these patents is only the right to use them during the existence of the partnership, the patents themselves constituted no assets or resources of the firm, but the right to use the patents during the existence of the firm was the only asset or resource in respect to them. That this was the meaning of the parties is further evident from the subsequent clause, as follows: "And during said time no right, title or interest, nor any permit or license, shall be sold, given or transferred to any other person, persons or corporations, to manufacture or sell under the said patents transferred to the said partnership, as mentioned in schedule 'B.'"

Had there been intended an absolute transfer of title, even if it had been thought necessary that Nichols and Murphy should be expressly prohibited, by the terms of the agreement, from thereafter exercising acts of ownership over the patents inconsistent with that transfer, it could not have been thought that such express prohibition was necessary only "*during said time,*"—*i. e.*, the existence of said partnership,—but it must have been thought that it should be perpetual. The covenant that "*during said time*" no right, title or interest, etc., shall be sold, etc., is an admission that at the end of said time, right, title, etc., in the patents may be sold, etc.

The decree directed the sale of the "*interest* of Nichols, Murphy and Geister in any and all patents," etc., and not the title to the patents, and this interest was sold and the sale was confirmed by the court, and so the Elgin Wind-Power and Pump Company now has it, but we forbear the expression of any opinion as to its extent, any further than we have already done. There was no necessity and no authority for filing the

supplemental bill, and the decree therein was consequently erroneous.

The judgments of the Appellate and circuit courts are reversed, and the cause is remanded to the circuit court, with direction to that court to enter a decree dismissing the supplemental bill.

*Judgment reversed.*