ANDERSON *v.* EILER *et al.*

(*Circuit Court of Appeals, Third Circuit.* May 6, 1892.)

1. PATENTS FOR INVENTIONS—LICENSE.
    A person who had produced mantels of a new design sold two of them to a manufacturer, who avowed an intention to use them as copies. *Held* that, although the sale was at the usual price, it must be considered as equivalent to a consent that the manufacturer might use the design, and the inventor, having subsequently obtained a patent, could not sue the manufacturer or his customers for infringement.

2. SAME.
    It was immaterial that the inventor sold only upon the manufacturer's assertion that he would purchase elsewhere, it appearing the mantels were on sale by others. 46 Fed. Rep. 777, affirmed.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

In Equity. Suit by William Anderson against Eiler, Breitwieser & Co., for infringement of a patent. The bill was dismissed, and complainant appeals. Affirmed.

*W. L. Pierce,* for appellant.

*James Aylward Develin,* for appellees.

Before ACHESON, Circuit Judge, and BUTLER and GREEN, District Judges.

BUTLER, District Judge. The suit is for infringement of letters patent No. 19,827, granted to William Anderson, June 23, 1890, "for designs for mantels." The mantels sold by the respondents are made after the complainant's design, and are covered by his patent. They were purchased from Mershon, Brown & Co., who made them. Several defenses are set up, among them a license in Mershon, Brown & Co.; and as we think this is sustained by the proofs, we need not consider any other.

It appears that Mershon, Brown & Co., who are manufacturers of mantels, wishing to use this design, (not then patented) purchased from Mr. Anderson (through an agent) two of his mantels, as samples, for this purpose. The agent explicitly informed him of their object in the proposed purchase, as the proofs show, and as he admits. He thus sold the mantels with knowledge that the only object in purchasing was to copy and use his design, and did it without objecting to the use contemplated. The inference is therefore, we think, irresistible that he consented to this use. Whether he actually consented or not, however, the circumstances estop his denial. His silence at the time closes his mouth. If he did not mean to consent he should have said so. Such denial now, and a recovery of damages for infringement, would constitute a fraud. It is true that the sum paid for the mantels was not large; no more than the usual price for their common use. Whether it was disproportioned to the value of the special use mentioned depends upon the question whether a monopoly in the design was then contemplated by either party. Clearly Mershon, Brown & Co. did not contemplate it. They supposed the design was open to the public, and virtu-

ally declared so at the time. Whether Mr. Anderson then intended applying for a patent is not clear. He did subsequently, though somewhat tardily, apply. But whether the sum was disproportioned to the value of the special use is not important, in view of the fact that this use was distinctly in the minds of both parties, and that the money was paid and received on the basis of it.

We do not see any force in the suggestion that Mr. Anderson was constrained to sell by reason of Mershon, Brown & Co.'s assertion that they could and would purchase elsewhere, for the purpose contemplated, if he refused. No deceit or force was employed. The assertion was true; others were selling the mantels. He was left free to sell or refuse. It may be implied from the evidence that he hesitated, and considered the consequences before deciding. He must have known that if he refused, and the samples were obtained elsewhere and his rights violated, the law would afford him protection; and the fact that he did so hesitate and consider before selling lends additional strength to the inference that he consented to the use contemplated, in consideration of the price received.

The decree of the circuit court is therefore affirmed.