ELGIN WIND POWER & PUMP CO. v. NICHOLS et al.

(Circuit Court of Appeals, Seventh Circuit. January 11, 1895.)

No. 166.

1. PATENTS FOR INVENTIONS—ACTION FOR INFRINGEMENT—JURISDICTION.
   The jurisdiction of a federal court, invoked by filing a bill for infringement of letters patent, is not defeated by a plea of license, which admits the use and validity of the patent. White v. Rankin, 12 Sup. Ct. 768, 144 U. S. 628, followed.

2. SAME—LICENSE—JUDICIAL SALE—PARTNERSHIP.
   Where one of the assets of a firm is a license to use during the life of the partnership a patent belonging to one of the copartners, the purchaser of the firm assets at a judicial sale takes no right to use such patent, even though the tools and patterns used for making the patented articles are included in the sale.

3. EQUITY PRACTICE—PLEA—EQUITY RULE 33.
   Under equity rule 33, which provides that "if upon an issue the facts stated in a plea are determined for the defendant they shall avail him as far as in law and equity they ought to avail him," the decision of the cause does not depend wholly upon the truth of the allegations of the plea, but the complainant may avoid it by proof of other facts.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Suit by William D. Nichols against the Elgin Wind-Power & Pump Company for injunction and accounting. Complainant died pending suit, and his administrators, Margaret A. Nichols and B. D. Nichols, were substituted as parties complainant. Complainants obtained a decree. Defendant appeals.

This suit was brought April 18, 1891, by William D. Nichols, a citizen of Illinois, against the Elgin Wind Power & Pump Company, a corporation of Illinois, for an accounting, and to enjoin infringement of letters patent for improvements in wind mills issued to the complainant on the 13th day of February, 1877, the 16th day of August, 1881, and the 9th day of October,

1888, and numbered, respectively, 187,297, 240,607, and 390,698. The complainant having died intestate, the suit was revived in the name of the appellees, as administrators; and the defendant, with leave of court, filed four pleas, in substance as follows: (1) The first, addressed to the entire bill, alleges that on the 14th day of December, 1883, William D. Nichols and John M. Murphy entered into a contract of partnership, in writing, for the manufacture and sale of wind mills, for the period of 10 years; that Nichols then agreed to put into the firm, for its full, free, and exclusive use, during said period, his entire right, title, and interest in and to any and all patents on wind mills which he then had and might thereafter have, together with any and all improvements which he might afterwards make thereon, etc.; that, in pursuance of the agreement, Nichols did put into the firm a full, free, and exclusive license to use the inventions and improvements described and claimed, and all letters patent relating to wind mills which he then had or might thereafter have, including all the patents mentioned in the bill of complaint, for and during the period of 10 years, and the same became a part of the assets of said firm, and that afterwards, on the 27th of September, 1884, Nichols & Murphy entered into a contract in writing with Geister, in and by which the parties agreed to form a new copartnership, under the style of Nichols, Murphy & Geister, for the purpose of carrying on said business, until the 1st day of January, 1886, which was afterwards extended until the 1st day of January, 1887, and that Nichols & Murphy, under the agreement of partnership, contributed to its capital stock all the assets and resources of the firm of Nichols & Murphy, which, defendant avers, put said full and exclusive license into the capital stock of said copartnership, and it became part of the assets thereof, and that in May, 1887, Nichols filed his bill in chancery in the circuit court of Kane county. Ill., against the said Murphy and Geister, praying, among other things, for the appointment of a receiver to take charge of the assets and business of said firm of Nichols, Murphy & Geister; that one Hoagland was appointed receiver, and, having taken possession, made, by order of the court, a sale of the business, property, and assets of the firm to the appellant, whereby, it is alleged, the appellant became possessed of the business and assets, including a "full, free, and exclusive license under said letters patent," and has been since the sole and exclusive owner thereof. (2) After setting out the partnership agreements of Nichols & Murphy, and of Nichols, Murphy & Geister, as in the first plea, with an averment of the further stipulation that the partners agreed to give their personal attention and services to the business of the copartnership, the second plea alleges that, during the existence and in prosecution of the business of the firm, Nichols made the inventions and improvements described and claimed in letters patent No. 390,698, "if the same were made by him at all," so that, it is alleged, they became the joint property of all of the partners, and a part of the assets of the firm; that afterwards, in 1887, Nichols brought a suit in chancery in the circuit court of Kane county, Ill., against Murphy and Geister, seeking to be decreed to be the absolute owner of letters patent dated, respectively, April 15, 1873, February 13, 1877, and April 26, 1881, free from all claims of the copartnership, praying for the appointment of a receiver, etc., but not claiming any right, title, or interest in and to the inventions covered by letters No. 390,698; that Hoagland was appointed receiver, and, under order of the court, sold to the appellant the business and assets of the firm, including the entire right, title, and interest in and to the last-named letters patent, for the sum of $43,000; that the sale was duly confirmed without objection from Nichols, and that by reason of his failure to give notice of any claim on his part to the said inventions, either in his bill of complaint or subsequent proceedings, the appellant was induced to invest, and did invest, in the business, a large sum of money, in the distribution of which Nichols participated, the appellant believing that the patents and inventions relating to wind mills, not specified in said bill, or otherwise claimed by Nichols, were included; wherefore, it is alleged, Nichols became and is estopped to assert title or interest therein. (3) The third plea, like the second, is addressed to letters patent No. 390,698, sets up the same partnership agreements, and alleges that the inventions or improvements described were made by Nichols, if made by him at all, during the existence of the

firm, and that his experiments in relation thereto were made with the machinery and tools and at the expense of the firm. The appointment of the receiver, and the sale of the business and property to the appellant, are alleged, whereby it is claimed the appellant became possessed of a sole and exclusive license to use the patent. (4) The fourth plea is to the entire bill, and sets forth the contracts of partnership of Nichols & Murphy and of Nichols, Murphy & Geister, alleging that Nichols agreed to put into the firm, and thereafter did put into the firm, as a part of its assets, all machines, patterns, wind-mill stock, and tools owned by him; that, at the suit of Nichols, a receiver of the business, property, and assets of Nichols, Murphy & Geister was appointed, who afterwards, in pursuance of an order of the court, sold and transferred to the appellant, for the consideration of $43,000, the property and assets of said firm, including machinery, tools, and patterns; that it was well known to Nichols, who, as complainant in the suit, was a party to the receiver's sale, that the appellant was purchasing the tools and patterns for the purpose of manufacturing wind mills of the kind alleged in the bill to be covered by the letters patent in suit, and for no other purpose; that Nichols consented to the sale, and personally received a large part ($7,400) of the proceeds, besides being released from partnership liabilities to the amount of $16,000; that the appellant thereby became entitled to use the tools and patterns so purchased in manufacturing the wind mills, for which alone they were capable of being used, and that all the mills which he has made or sold were made by and with the patterns so purchased: Wherefore; etc. Replication in the usual form. The cause was heard on the pleadings and proofs and, upon a finding that the pleas were not true, a decree was entered in favor of the complainants, and a reference ordered to a master, who should ascertain and report an account of gains and profits.

Banning & Banning (D. B. Sherwood, of counsel), for appellant.

Charles Wheaton, for appellees.

Before HARLAN, Circuit Justice, WOODS, Circuit Judge, and BUNN, District Judge.

WOODS, Circuit Judge (after making the foregoing statement). The objection was raised at the hearing, by counsel for the appellant, that under the ruling in Hartell v. Tilghman, 99 U. S. 547, the case is one of which a federal court cannot take jurisdiction—the parties being of the same state, and the pleas being to the effect that the appellant had a license to use the inventions covered by the plaintiff's letters patent, the validity of which is not denied. The bill in this case is in the customary form for infringement of letters patent, and the proposition contended for necessarily implies that the jurisdiction invoked by the filing of such a bill—of which, it is to be observed, no court except a federal court can take cognizance—may be defeated by a plea of license which admits the use and validity of the patent sued on. If the decision in Hartel v. Tilghman ever meant that much, it has been explained and limited by later decisions, which leave no doubt of the federal jurisdiction in cases like the present. White v. Rankin, 144 U. S. 628, 12 Sup. Ct. 768; Manufacturing Co. v. Hyatt, 125 U. S. 46, 8 Sup. Ct. 756; Marsh v. Nichols, Shepard & Co., 140 U. S. 344, 11 Sup. Ct. 798.

In respect to the merits of the appeal, much stress has been laid upon the rule that a replication to a plea admits its validity, and that, if the particular facts stated in the plea be proved to be true, the bill must be dismissed, without reference to the equity arising from any other facts stated in the bill. Farley v. Kittson, 120 U. S. 303, 314,

7 Sup. Ct. 534; U. S. v. California & O. Land Co., 148 U. S. 31, 13 Sup. Ct. 458. A necessary corollary is that strict proof must be made of "the particular facts stated in the plea," and it will not be enough to prove less than, or something different from, what is averred. In the federal practice, however, the rule itself has been modified by equity rule 33, which provides that "if upon an issue the facts stated in a plea are determined for the defendant, they shall avail him as far as in law and equity they ought to avail him." In respect to that rule, the supreme court, in Pearce v. Rice, 142 U. S. 28, 42, 12 Sup. Ct. 130, said:

"It clearly takes from the establishment of the plea the effect it had under the old law. When, by filing a replication, issue is taken upon a plea, the facts, if proven, will now avail the defendant only so far as, in law and equity, they ought to avail him. Under the existing rule, the court may, upon final hearing, do at least what, under the old rule, might have been done when the benefit of a plea was saved to the hearing. 'When,' says Cooper, 'the benefit of the plea is saved to the hearing, the decision of the cause does not rest upon the truth of the matter of the plea, but the plaintiff may avoid it by other matter, which he is at liberty to adduce.'"

However, of the pleas in question there are substantial averments which are not proved. It is alleged in the first three of the pleas, for instance, that Nichols gave to Nichols & Murphy an exclusive license to use his patents for the period of 10 years, the term of the partnership; while the proof shows that the agreement was that the license should continue "during the life of the partnership," and that any invention made by either party, in the "prosecution of the company's business," should be "the joint property of both parties." Again, it is true that Nichols & Murphy contributed to the copartnership of Nichols, Murphy & Geister "the assets and resources of the late firm of Nichols & Murphy," mentioned in the inventory and schedule attached to the contract; but it is not true, as averred and contended, that the new firm thereby became possessed of a license to use the inventions, or any of them, for the remainder of the term of 10 years, for which the partnership of Nichols & Murphy had been designed to continue. The utmost that can justly be asserted is that the new firm acquired an exclusive license for the term of its own existence, during which it was stipulated that no right, title, interest, permit, or license should be granted to any other person or corporation to use, manufacture, or sell under the patents mentioned in the schedule attached to the contract. In the schedule referred to, particular patents were not specified, but simply, "Patents and business, $6,000," followed by this statement:

"The above patents include all patents and improvements on the wind mill, feed mill, and all other machinery and implements used in connection with said manufacture, and on articles manufactured in the said business."

While this language shows that patent interests were treated as a part of the assets and resources of Nichols & Murphy, it does not, in terms or by fair implication, include inventions or improvements not then in existence, and which, when brought into being, were to be, according to the agreement, not partnership property, but "the joint property of the parties," which is a very different thing.

If the firm of Nichols & Murphy ceased to exist when that of Nichols, Murphy & Geister was organized, ipso facto the license to the first firm to use the patents ceased, and, strictly speaking, constituted no part of its transferable assets or resources. The manifest intention, however, was that the new firm, during its life, should have the same license which the other firm had had; and whether it be considered that the original license was transferred, or that the legal effect of the second contract of partnership was a grant by Nichols, with the consent of Murphy, of a new license to the new firm, it is not important to determine. The new firm acquired no right which could run beyond its term of life and be sold as a part of its assets. So the supreme court of Illinois seems to have held in the case of Nichols v. Murphy, 136 Ill. 380, 26 N. E. 509. Being between the same parties, the judgment in that case, if it had been pleaded, would perhaps be a strict estoppel; but whether, being in proof without objection, it should be given that effect, we need not inquire, as our conclusion upon the evidence, outside of the judgment, would be the same.

It has been suggested that the copartnership of Nichols & Murphy was not merged in the new firm and was never otherwise dissolved, and that if the right in the patents acquired by Nichols, Murphy & Geister ended in 1887, the license for the remainder of the original term of 10 years still belonged to Nichols & Murphy, and that the use of the inventions by the appellant, having been with the consent and authority of Murphy, was rightful and affords no ground for a suit for infringement. If conceded to be true, the proposition is not available, because no such right is set up in any of the pleas. No right or license under the patents is asserted, except as derived from the firm of Nichols, Murphy & Geister, through the receiver's sale of the partnership assets.

The fourth plea differs from the others, in that it counts not on an express but upon an implied license, arising out of the sale by the receiver, and purchase by the appellant, of the tools and patterns used in manufacturing wind mills of the kind covered by the patents. The averments of this plea are not all proved as laid. No reference is made to the agreement between Nichols and Murphy, or to the fact of their partnership; but it is alleged that by the partnership contract of Nichols, Murphy & Geister, Nichols agreed to put into the firm, and afterwards did put into the firm, as a part of its assets, all machines, patterns, wind-mill stock, and tools owned by him. The proof, on the contrary, shows no individual contract by Nichols in respect to individual property, but a contract by which Nichols & Murphy, as partners under their previous contract, entered into a contract of copartnership with Geister, wherein it is recited that "the said Nichols & Murphy have contributed jointly to the capital stock of said copartnership the assets and resources of the late firm of Nichols & Murphy," and that "the said Nichols & Murphy will be the owners of two-thirds interest, jointly, and the said Geister the owner of a one-third interest, in said copartnership." The plea, therefore, fails for want of proof; but, if the averments were all true, it ought not

to prevail. The tools and patterns belonged to Nichols, Murphy & Geister, and were necessarily included in the order for the sale by the receiver of the assets of that firm; but a sale of tools and patterns which are used solely for the manufacture of a patented device, even if the sale be made by the owner of the patent, does not necessarily imply a license to the purchaser to manufacture and sell the device. That depends on the intention of the parties, and is a question of fact. In Anderson v. Eiler, 1 C. C. A. 659, 50 Fed. 775, where the owner of a new design for mantels sold one of the mantels to a manufacturer, who avowed his purpose to use it as a pattern, the court says:

"The inference is therefore, we think, irresistible, that he consented to this use. Whether he actually consented or not, however, the circumstances estop his denial. His silence at the time closes his mouth."

That is, his silence proved his consent. The appellee in this case was not silent. His assertion of individual ownership of the patents, and denial of any right of Murphy and Geister to the use of them, was distinctly made in the suit which he brought against them, and otherwise; and the proof is clear that the parties composing the appellant company, for whom the purchase was made, were not ignorant of the fact and extent of his assertion of right. The receiver, Hoagland, as one of the organizers of the appellant company, was himself interested in the purchase. His testimony is in the record, and in answer to the question whether Nichols did not claim the ownership of the patents, and that the purchaser at the receiver's sale would not acquire any interest in them by the purchase, he said: "I think Mr. Nichols never let up on that. He always claimed that." It is shown, moreover, that the parties concerned in organizing the appellant company negotiated with Nichols, before the purchase, with a view to the acquiring of his rights in the patents, and the circuit judge was clearly justified in concluding that "they were purchasers with notice of his rights." It is not shown what estimate was put upon the patterns by the appellant when the purchase was made, and, if any considerable sum, it must be presumed to have been with the purpose of acquiring the patents, or a license to use them. The decree of the circuit court is affirmed.