MIX v. NATIONAL ENVELOPE CO.

(District Court, E. D. Pennsylvania.   September 5, 1917.)

PATENTS ⬤⟹210—IMPLIED LICENSEE.

> An employé, salesman of defendant envelope manufacturer, having induced it to manufacture and sell the envelope which he had invented without putting any limitations on its rights, it was given an implied license to make and sell to its customers, subject to which plaintiff, assignee of the patent with notice, took.

In Equity.   Suit by Frank E. Mix against the National Envelope Company.   Hearing on bill, answer, and proofs.   Bill dismissed.

A. S. Ashbridge, Jr., of Philadelphia, Pa., and F. A. Whiteley, of Minneapolis, Minn., for plaintiff.

Henry P. Erdman and George K. Helbert, both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge.   Following the very complete analysis of this case and the orderly arrangement of the questions involved, presented by counsel, we are led to one question which, if answered favorably to the defendant, is the only question with which it is concerned.   The question may be presented by an outline statement of the facts out of which it arises, or by a formulation of the equitable principles upon which it is based.   The latter method is somewhat academic, but a clear view of the legal principle better enables us to see whether or not it is applicable under the special facts of this case.

The Constitution and laws of the United States give the fullest recognition of the wisdom of the policy outlined in the constitutional provision relating to useful inventions and discoveries.   The promise of reward held out is the grant of a monopoly or exclusive proprietary right for, a limited time in and to the thing invented.   Not every valuable discovery earns the reward, and it is often not claimed when it is earned, and sometimes, when it is claimed, there are other considerations which compel its denial.   There are usually two things which enter into the commercial value of an invention.   There is, first, the invention itself.   There must be the creation of a thing before it can have a value.   Next, and often of more commercial importance, is the bringing of the invention to the knowledge of possible users, and through this the creation of a commercial demand.

The man who has made a real invention of value has the right to the grant of a patent monopoly; but he must add the further contribution of effort and expense which will give a commercial value to the thing invented.   If, without claiming his right to a patent, he makes his invention public, and encourages others in its use, out of which there springs a commercial demand, he thereby forfeits the right which he would otherwise have.   The justification for this is clear, because the granting of his belated application would permit him to appropriate, not merely the value which his own efforts had contributed to an article of commerce, but that which sprang from the efforts of others also.   An inventor cannot be permitted to give his invention to

the public, in order to create a commercial value, and afterwards withdraw his gift, if he finds it to his advantage so to do. We have, therefore, the doctrine of a dedication to the public.

Whether there has been a dedication is a question of fact. Within the time allowed in which to make his application for a patent, there is no presumption of an abandonment of his right. The abandonment must be proven as a fact. After the time limitation has passed, the burden shifts, and is upon him to show the preservation of his rights. What is essentially the same principle is applied in the relation of the inventor to an individual. An employé, who makes an invention of value in the work of his employer about which he is employed, and invites his employer to engage in its manufacture for use or sale, cannot deny to his employer the right thus exercised. This thought is expressed in the doctrine of implied license. It is really the doctrine of dedication, with the employer substituted for the public, and is based upon the same equitable considerations.

The common sense of justice, which all men have, is, as a rule, a safe guide to follow, and this sense of justice would condemn the action of any employé who first led his employer into making outlays to introduce to customers of the employer and to build up a valuable trade in a before untried invention, and, after the trade has been established, to take away from the employer, not only the right to make use of the invention, but the trade built up by the employer, and many of his old customers along with it. The sense of injury under which such employer would smart would be inflamed if such a thing were done by a rival trade competitor, who had become the alienee of the employé's invention. The sum expended by the employer might be so large as to give emphasis to the wrong, but the amount of the money involved would not control its essential character. The principle of law which would afford protection to the employer against such a wrong would have our acquiescence, even without the sanction of rulings made in adjudged cases. The principle, however, has abundant sanction, as a reference to the following cases, among many which could be cited, will show: R. S. § 4899 (Comp. St. 1916, § 9445); Anderson v. Eiler, 50 Fed. 775, 1 C. C. A. 659; Schmidt v. Foundry Co. (D. C.) 218 Fed. 466; Solomons v. U. S., 137 U. S. 342, 11 Sup. Ct. 88, 34 L. Ed. 667.

The principle, then, being established and vindicated, it only remains to inquire whether it has application to the present case under its facts. A wrong, such as indicated above, might be done under circumstances which would make it appear glaring and flagrant. There might be other circumstances which, to a greater or less degree, would so obscure our view of it that the wrong might not be perceived. There are some such circumstances in this case. To begin with, the employer here does not seem to have recognized any inventive merit or commercial value in the idea of putting out the style of envelope which the plaintiff's assignor claimed to have invented. The claimed invention was so far from being given a cordial reception that positive discouragements were thrown in the way of the employé, who at least thought he had hit upon something of value. It is human nature to think well of our ideas because they are ours, and we resent the rejection of them, es-

pecially if they are rejected upon presentation. This employer, indeed, further seems to have tried out this special style of envelope without believing it to have any other merit than that the employé, who thought it to be good, would thereby become a more zealous and pushing selling agent.

It is a further fact that, entertaining the opinion of the envelope which they did, the officers of the defendant company made no effort to extend the sale of this envelope, merely filling orders for them when received, but attaching no importance to the trade which might be built up in them. It was the wholly natural and to be expected consequence that the employé would take his ideas to a more appreciative market. To the extent, great or small, however, to which the envelope was introduced to the defendant's trade, and especially to their old customers, to that extent the sale of the right to make and vend, if an exclusive one, transferred, not merely the control of the claimed invention, but also of defendant's established trade. That they should seek to hold their old trade, by continuing to supply it with what they had before supplied, is likewise natural, and their feeling that° they had the right so to do is one which would also command ready sympathizers. This right we think to belong to them as a legal right.

The conclusion reached does not impair the proprietary right of the plaintiff to this invention, if it be one, except to the extent indicated. The plaintiff took the right assigned to it subject to the equities to which it was subject. Nor does the ruling affect, except to a like extent, the right of alienation which goes with his property right. He cannot, however, regrant to one what he has already granted to another. The patentee owned whatever property he had in his claimed invention. He might have withheld it entirely from his employer. He might have sold or given it absolutely. He might have sold or given a license to make and to vend. He could not, however, sell or give that which was the equivalent of such a license and withdraw it to the prejudice of his donee. When the defendant made and sold the envelope, the exclusive right to make or sell which the plaintiff now claims, the defendant either was a trespasser or had a license from the patentee so to do. That the defendant was not a trespasser is clear. The alternative proposition is likewise clear. If the patentee meant not to have granted a full license, but one which he could withdraw at will, he should have so limited it at the time. The licensee could then have determined whether it would build up a trade which might be diverted to a commercial rival, and bargained for such rights of ownership or license which would protect its trade, or refuse the limited right offered.

The proposition resolves itself into this: The patentee granted, without restriction or limitation, the right to the defendant to make and to sell to its customers this patented envelope; and, having received the consideration for the grant, he cannot now write into it limitations which were not in the bargain when made. What the patentee cannot do, his alienee with notice cannot do. That an assignee of the patent had this notice could be found as a fact, because it took the patent with knowledge of the fact of what had previously been done. The controversy relates to letters patent No. 1,125,864,

issued January 26, 1915. The question of the validity of the patent does not concern the defendant, if its rights are not affected thereby. For this reason, the other questions discussed in the argument may be left as they are.

The bill of complaint is dismissed for want of equity, with costs to the defendant, and a formal decree to this effect may be submitted.