## WADE v. METCALF and others.

*Circuit Court, D. Massachusetts.    April 12, 1883.)*

PATENTS FOR INVENTIONS—PARTNER ALLOWING FIRM TO MAKE AND USE HIS
    INVENTIONS—SECTION 4899, REV. ST.—RIGHTS ON DISSOLUTION.
    When an inventor, as a member of a firm and at the joint expense, makes
    and alters machines so as to embody his invention, and permits their use by the
    firm, the firm acquires the right to the continued use of such machines, under
    the provisions of section 4899 of the Revised Statutes; and as the machines are
    the property of the firm, upon dissolution each member, to the extent of his in-
    terest in the partnership assets, has a right in them and to their use.

In Equity.

Wade, the plaintiff, was connected with the defendant Metcalf in
the business of making buttons by machinery from 1868 to 1880.  In
1875 the defendant McCleery was associated with them, and a firm
called the Boston Button Company was formed, in which the plain-
tiff had an interest of one-quarter, Metcalf of one-half, and McCleery
of one-quarter.   In 1869 Wade obtained two patents for improve-
ments in machines for making buttons, which were understood to be
owned by the firm, and one-half interest, which was afterwards as-
signed by Wade, to Metcalf, is still owned by him.   When the new
firm was formed, in 1875, a part of the stock was in twelve machines,
which contained Wade's improvements of 1869.   Afterwards, Wade
made other improvements, from time to time, which were fitted to
the old machines, and new machines were built, to which these new
inventions were attached, or into which they were incorporated.
The new machines were built, and the old machines were experi-
mented upon and altered, at the expense of the firm, were their prop-
erty, and were worked for their benefit.   In July, 1879, the plaintiff
applied for a patent on his new improvements, and one was granted
in June, 1880,—No. 228,233.   His partners insisted that he was
bound to give them a share of all inventions made by him upon this
class of machines during the continuance of the partnership, and he
insisted that they had no right even to use his later inventions in the
machines which the firm owned.   Upon this there arose discussion
and ill-feeling, and, after some attempts by the plaintiff to put an
end to the firm by notice, and by bill in equity, a contract was agreed
on, and signed and sealed by the parties, by which the defendants
paid the plaintiff $12,000, and assumed all the debts of the company,
and he conveyed to them all his interest in the assets and good-will
of the firm.   The contract declared that whereas 48 machines, con-

taining certain improvements, had been manufactured by the firm, and were in use by them, and Metcalf and McCleery claimed the right, as members of the firm, by virtue of such manufacture and use, to continue the use, which Wade reserved the right to deny, nothing in the sale and conveyance should operate to impair the rights of either party. This suit is brought to restrain the use of those machines, and decide the question thus left open.

*G. L. Roberts* and *B. E. Perry*, for plaintiff.

*H. C. Hutchins* and *H. Wheeler*, for defendants.

LOWELL, J. It is admitted by the plaintiff that the 48 machines were built and altered at the expense of the firm, and were lawfully used by them to the date of the patent, and that they were conveyed to the defendants by the contract of dissolution, and that they may use them if they will remove the improvements patented in 1880. The defendants maintain their right to use them with all their improvements.

Most of the six improvements covered by the latest patent were invented and put in use more than two years before the plaintiff's application for his patent of 1880; but, as to two of them, there is a serious dispute whether they were completed so early as to be forfeited. A nice question was made upon this state of the evidence, whether distinct and separable devices, not co-operating with the others, might not be forfeited, though those others were invented within the two years, and though all were applicable to parts of the same machine, so that they were properly joined in a single patent. I do not find it essential to the decision of the case to pass upon this question.

I find the defendants to be well sustained in the position that they have a right to use these 48 machines. Their case seems to come within the very words of Rev. St. § 4899, that every person who purchases of the inventor or discoverer, or with his knowledge and consent constructs a machine or patentable article before his application for a patent, or who uses one so constructed, shall have the right to use, and vend to others to be used, the specific thing so made or purchased, without liability therefor. This section of the statute, which first appeared in the law of 1839, § 7, (5 St. 354,) has been usually applied to the case of employer and workman. If the workman, by using the tools and time and money of his employer with his consent, makes an invention and applies it in his employer's business, the employer may continue to use it. If the improvement is a process,

it has been held that the employer may continue to practice the process for the whole period of the patent. *McClurg* v. *Kingsland*, 1 How. 202; *Chabot* v. *American Button-hole, etc., Co.* 6 Fisher, 71. But, if the invention pertains to a machine, it is understood that only the specific machine or machines which have been so made are licensed. *Pierson* v. *Eagle Screw Co.* 3 Story, 402; *Brickill* v. *Mayor, etc., of New York*, 7 FED. REP. 479.

The plaintiff contends that this law only applies to employers and employed. But there is no such limitation in the statute. When the plaintiff, as a member of the firm, and at the joint expense, made and altered these machines, and permitted their use by the firm, how does he escape the statute by being himself one of the firm? The law was applied without hesitation to a case of this kind in *Slemmer's Appeal*, 58 Pa. St. 155.

Again, the plaintiff contends that if the statute has any application, it only grants a limited and personal license to a certain legal individual called a firm, which ends when the firm ends. But the section in question describes in unmistakable language a complete and perpetual release of the specific articles from the monopoly.

There is another way of stating the case. It is admitted that these machines were the property of the firm. It follows, without reference to section 4899, that all the members of the firm have an equal proportionate right in them. No partner can, by dissolving the connection, acquire a disproportionate share in the joint property. This is a fundamental rule of justice, which does not need to rely on a written law. To the extent of their respective interests, which happens to be three-quarters, the defendants were the makers or purchasers of these machines, as they stand, with their improvements. When the firm was dissolved, and the plaintiff consented to convey all the assets to the defendants, his reservation of an exclusive right in an important part of the machines was useless and void. I do not mean that it was repugnant on its face; the reservation saved that; but, by reason of his being only a part owner, he could not have this exclusive right. Indeed, I understand the contract of dissolution to agree that, if the defendants, while remaining members of the firm, might use the improvements, they should have the right to continue the use notwithstanding the dissolution. The question left open was whether they ever had any such right. The plaintiff admitted in that contract, very properly, as I think, that whatever right the firm had would survive to the defendants. That the firm might

use the machines which were built by and operated under the supervision of the plaintiff, and used by them for some years with his consent, is clear.

Bill dismissed, with costs.