CONVERSE *v.* MICHIGAN DAIRY Co. *et al.*

*(Circuit Court, W. D. Michigan, S. D.* February 12, 1891.)

1. MORTGAGES—FORECLOSURE—PARTIES.
    A mortgagee can make judgment creditors of the mortgagor's grantor parties to his foreclosure suit when these creditors assert a claim on the ground that the transfer to the mortgagor was in fraud of their rights, and that therefore their executions, levied after the execution of the mortgage, are prior liens on the land.

2. SAME—MULTIFARIOUSNESS—WAIVER.
    An objection to a bill of foreclosure that it is multifarious because it brings in parties claiming rights paramount and hostile to the mortgagor comes too late when made at the hearing, if such claim is of equitable cognizance.

3. SAME—JUDGMENT CREDITORS—PRIORITIES.
    A mortgage executed to secure notes which are indorsed before due for value and without notice, before the land is levied on by the judgment creditors of the mortgagor's grantor, who claim that the transfer to the mortgagor was in fraud of their rights, is paramount to the executions of such creditors, since, under the Michigan law, a judgment is no lien.

4. SAME—COURTS—STATE AND FEDERAL—JURISDICTION.
    Where a mortgagee sues to foreclose in a federal court, and makes judgment creditors of the mortgagor's grantor parties defendant, the suit will not be postponed until the termination of proceedings instituted by these creditors in the state court to establish their liens on the land, to which proceedings the mortgagee is not a party.

5. SAME—INDORSEMENT OF NOTES—ASSIGNMENT OF MORTGAGE.
    The indorsement and delivery of the mortgage notes by the mortgagee operates as an assignment of the mortgage to the holder of the notes.

In Equity. On final hearing.

The facts in this cause, so far as the same are necessary to an understanding of the subjoined opinion, are as follows: The defendant the Michigan Dairy Company derived its title to the lands involved in this proceeding from the defendant David P. Clay; a portion of such lands having been conveyed to the dairy company in the year 1884, and the remainder on the 13th day of September, 1886. On the last-mentioned day the dairy company executed a mortgage upon said lands to David P. Clay, to secure the payment of 56 notes of $1,000 each, due six years thereafter. In the mortgage was a clause making the whole debt payable, at the election of the mortgagee, upon default in the payment of the annual interest. All of these notes were afterwards indorsed by Mr. Clay, and delivered to the complainant, as collateral security for the payment of about $20,000, then borrowed by said Clay of the complainant. This mortgage was recorded October 22, 1886, and this suit was instituted to foreclose said mortgage. The defendants the Fourth National Bank of Grand Rapids, Mich., and the German Bank of Sheboygan, Wis., were made parties under the eleventh paragraph of the

bill of complaint, which, as to the last-named defendants, merely alleged that they had, or claimed to have, some interest in the premises as subsequent purchasers, or incumbrancers, or otherwise. The Fourth National Bank of Grand Rapids in its answer denied the eleventh paragraph of the bill of complaint, and set up that the conveyance from Clay to the dairy company was made in fraud of Clay's creditors, and was, as to such creditors, void; that on the 16th day of December, 1886, said Fourth National Bank recovered three judgments against said Clay, aggregating about $22,333; and that the interest of Clay in the lands covered by the mortgage in question had been levied upon in its suits against him by attachment about the 6th day of December, 1886, and upon executions issued upon said judgments on or about the 28th day of December, 1886. The German Bank of Sheboygan set up a similar defense, claiming a lien upon the lands for the amount of a judgment in its favor of about $4,148, recovered against Clay October 13, 1886, upon which execution was issued, and, on or about November 8, 1886, levied upon his interest therein. These defendants also severally set up the pendency of suits in the circuit court of the state, brought to enforce their liens under these levies, and both said banks prayed that the mortgage should be held void by reason of such fraud, and be not enforced as against them. At the hearing it was urged in behalf of these banks that their claim was hostile and paramount to that of the dairy company, and therefore prior, not subsequent, to the mortgage which the complainant sought to foreclose; and that therefore their rights could not be adjudicated under the general allegation of the complainant's bill, which brought them in merely as subsequent purchasers or incumbrancers.

*Fletcher & Wanty*, for complainant.

*Blair, Kingsley & Kleinhans*, for defendants the Fourth National Bank of Grand Rapids and the German Bank of Sheboygan.

SEVERENS, J. Upon the hearing of this cause the German Bank of Sheboygan and the Fourth National Bank, defendants, urge and insist that the court cannot adjudicate their rights in the lands mortgaged, because their rights, as asserted, are paramount to those of the mortgagor, and hostile thereto; and it is further insisted by them that an attempt to litigate those rights on this foreclosure bill would make the proceeding multifarious. Decisions of the state supreme court are referred to in support of the proposition that upon a bill to foreclose a mortgage only those matters can be litigated which affect the equity of redemption, and that parties claiming titles or liens originating prior to the mortgage cannot properly be made parties to the suit. But I do not understand the rule to be declared inflexible by those decisions. However that may be, the rule in the courts of the United States has long been settled differently, where the mortgage is of the fee, and the sale prayed is of the property so mortgaged. *Finley* v. *Bank of U. S.*, 11 Wheat. 304; *Hagan* v. *Walker*, 14 How. 29. In the case of *Dial* v. *Reynolds*, 96 U. S. 340, there were wholly conflicting titles. Here the banks assert a lien upon the title of the mortgagor's grantor, not in hos-

tility to his title, but in recognition of it, and they claim, at least such is the legal effect of their position, that they have not a paramount title, but, to the extent of their claim, a paramount lien, upon the ground that as to them Clay's deed to the company was fraudulent. As to them, the deed was not wholly void. The title passed and was mortgaged by the dairy company. Bump, Fraud. Conv. (1st Ed.) p. 451. But, independently of this, the lien the banks assert did not originate until after the mortgage was executed. As creditors at large, or having no levy, they had no lien. It is true the facts *in pais* upon which they found their lien, and which they bring forward as evidence, existed previously; but they connect themselves with the property only by the levy subsequent to the mortgage. *Maynard* v. *Hoskins*, 9 Mich. 485; *Tyler* v. *Peatt*, 30 Mich. 63; *Griswold* v. *Fuller*, 33 Mich. 268; *Root* v. *Potter*, 59 Mich. 498, 26 N. W. Rep. 682; *Bank* v. *Bates*, 120 U. S. 556, 7 Sup. Ct. Rep. 679.

Under the law of Michigan, there is no lien by judgment merely. I think the complainant has the right to have the validity of this lien determined before the mortgaged property goes to sale; otherwise, the bidding must be for something of dubious title and value, and the satisfaction of the mortgage debt be seriously imperiled by this supervening levy. A mortgagee ought not to be left in such a predicament.

The question whether collateral controversies shall be litigated in a foreclosure suit is in large measure one of convenience, and where the interests of the parties require it, and it is necessary in order to administer adequate relief, the court should take cognizance of the collateral questions. Story, Eq. Pl. § 539; *Shepherd* v. *Pepper*, 133 U. S. 651, 10 Sup. Ct. Rep. 438. It may be that if the sale by Clay to the company was fraudulent, as alleged, and the complainant had notice of it, the banks have a paramount lien. That is matter for adjudication. The suggestion that the suit is thus made multifarious is late when made at the hearing. The answers of the banks do not present that as a ground of objection, but, at least by strong implication, invite adjudication. It is true they ask postponement until certain proceedings alleged to be pending in the state court shall be terminated, but I know of no principle on which this could be authorized. The pendency of a suit there is no bar to the present. Besides, the complainant is not a party to that suit, and cannot be affected by it. *Cook* v. *Burnley*, 11 Wall. 659; *Insurance Co.* v. *Brune's Assignee*, 96 U. S. 588; *Gordon* v. *Gilfoil*, 99 U. S. 168. These defendants, therefore, knowing, as they must have done, that the object of bringing them in at all was in order that their claims should be cut off by the decree, and not having raised the objection of multifariousness until now, come within the scope of the doctrine repeatedly declared by the supreme court, that, if the matters were of equitable cognizance, the objection must be raised *in limine*, and, if not then made, it should not be entertained. *Oliver* v. *Piatt*, 3 How. 333; *Nelson* v. *Hill*, 5 How. 127; Story, Eq. Pl. § 284a.

I incline to think that the allegation, though general, in the bill, that these defendants have, or claim to have, rights and interests in the prem-

ises above described as subsequent purchasers, incumbrancers, or otherwise, taken in connection with the averments of the answers in response thereto, and the evidence it affords that the general allegation in the bill was understood to be aimed at the only one specific claim which the defendants assert, is sufficient; but, if not technically so, the bill may be amended in this particular, so as to allege the defendants' levy, and, in a brief way, the claim of the defendants thereunder. The indorsement of the mortgage notes, and the delivery thereof to the complainant, operated as an assignment of the mortgage, and transferred to the holder of the notes the same equitable rights in the mortgage as he had in the notes. *Cooper* v. *Ulmann*, Walk. (Mich.) 251; *Martin* v. *McReynolds*, 6 Mich. 70; *Briggs* v. *Hannowald*, 35 Mich. 474; *Carpenter* v. *Longan*, 16 Wall. 271; *Kenicott* v. *Supervisors*, Id. 452; *Ober* v. *Gallagher*, 93 U. S. 199, 206. One of the rights acquired by the assignment was that of exercising the election to declare the debt due on default in the payment of the interest.

A decree will be entered for complainant to the amount of the sums advanced upon the $20,000 note, and interest, less the credits which have been stipulated, with the interest thereon from their several dates.