Simonton, District Judge.
This case comes up on the bill and demurrers thereto. The bill is filed by Louis Ranger, alleging that he is a stockholder in the Champion Cotton-Press Company, a body corporate. That the number of shares was 120, at $700 each. That the company purchased and owned 19 of these. That Mrs. Elizabeth Dowie, who is a defendant, owns 15 shares; Miss Margaret B. Mure, another defendant, owns 15 shares; William Mure, another defendant, 10 shares; R. D. Mure, also a defendant, 6 shares; William Fatman and B. F. McCabe, the other defendants, 20 shares and 15 shares, respectively. Thus all the stockholders are parties to the suit, and with them the corporation. The bill further alleges that, having been prevented by the failure to hold, in 1891, the meeting provided by the by-laws, and the consequent failure to make an exhibit of the affairs of the company by the officers thereof, complainant requested and demanded, at the annual meeting in 1892, a clear and full exhibit of the business and affairs of the company, and that this was peremptorily refused by the president and other officers. That he desired also to examine the books of the company so as to ascertain its condition, and that this also was peremp *612 torily refused him. He charges that B. F. McCabe, the president of the company, and the other officers, have managed the affairs of the company, not in its interests, but for the personal interest and benefit of B. F. McCabe, or their own. He specially charges that B. F. Mc-Cabe used the funds of the company for his own purposes and use. That he had on 4th June, 1891, and still has in his hands $25,640.95 in cash, the money of the company, and that he has used and is using this money for his own purposes, uses, and benefits, and not for those of the company. That this money should be divided as a dividend among the stockholders; and that McCabe and the other officers refuse so to divide it; and McCabe refuses to give any account of it, using the same as his own. That although the by-laws of the company require all funds of the corporation to be deposited in the name of the company, and to be checked out by the treasurer with the countersign of-the president, this rule has been disregarded by McCabe, the president. All the moneys of the company are deposited in his private account, and drawn on by his own checks, and used by him as he sees fit. That at the annual meeting the complainant caused a resolution to be offered by William Fatman, his proxy, calling upon McCabe to render an account of moneys advanced by the company to him for the purpose of contracting business for the company, which necessity no longer exists; and that McCabe, as chairman, refused to allow the resolution to be put and voted on, and that.William Mure, the secretary of the meeting, refused to receive the resolution or to enter a vote thereon. That this action was taken by the said defendant to evade and prevent any accounting by said McCabe for such moneys, or repayment of the same to the company. The bill charges a loss of $3,300 to the company from the bad management of McCabe, and from the use by him of the company’s moneys for his own purposes. The bill charges the Joan of $10,000 company’s money under the guise of his own to William Fatman, secured by pledge of stock of the company, and the subsequent purchase by the company of this stock, which purchase was against the protest and vote of complainant, and is in itself unlawful, null, and void, beside depriving the stockholders of a dividend to that extent. He charges that an examination of the books would show ample funds applicable to a dividend. The bill also charges that the action of McCabe is intended so to depress the stock as to compel complainant to sell out to him, and that he is using his power as an officer of the company to this end. The prayer is for such an examination; that McCabe pay back all moneys due and owing by him to the company, and in his hands by reason of his official position; that the company declare a dividend from all funds applicable to dividends; and that the dividend due to the complainant be paid to him; that, if it appear from an accounting that McCabe and the other officers of the company have used the funds and business of the company for their own purposes, they be required to make good the same and the losses therefrom; and that a receiver be appointed, and all the assets of the' company be realized and divided among the stockholders.
*613 The defendant B. F. McCabe files a separate demurrer. So does the Champion Cotton-Press Company. Mrs. Dowie, Miss Mure, William Mure, and Robert D. Mure join in a demurrer. The demurrers each allege for cause that the complainant has not, by his bill, made such a case as entitles him, in a court of equity, to any relief against the defendants.
Let us examine the demurrer of the president, B. F. McCabe. The bill charges that he has taken possession and control of the moneys of the corporation, depositing them in bank in his own name, in defiance of the express provision of the by-laws, and drawing them out on his own check, in his own discretion, for his own purposes; that especially he has in his hands the sum of $25,680, money of the company, which he has converted to his own use, and for which he fails and refuses to account; that by this action, and the further misuse of the company’s funds by lending them in his own name, the complainant has failed to receive bis proper share of the funds of the company in the shape of a dividend on his stock; that all of his efforts to ascertain the truth about this misuse of funds by the president in an examination of the books, or in calling the president to account therefor, have been baffled and defeated by the direct and active effort of the president himself, aided by the other officers, going so far as to refuse to receive and put a motion for investigation made at a stockholders’ meeting; and that there is a definite purpose so to use the affairs of the company as to depress the stock so as to compel complainant to sell out at a loss. All of these charges are by this demurrer admitted by Mr. McCabe without qualification or explanation; and in this course the corporation, presumably under his control and management, concurs. The other defendants limit their demurrer to such relief as is sought against them. Here we have the admission that a complaining stockholder in a trading corporation has been defrauded and deprived of his share of its property applicable to dividends, by the action of the president in misusing for his own purposes the moneys of the company. That every effort made by him to ascertain the facts connected with this charge have been thwarted by the positive and distinct refusal at the hands of the president, made at an annual meeting of the stockholders, to give any information or explanation whatever. This admission is made. It is denied that a court of equity can give any relief. Strong, indeed, must be the formal or technical difficulties which will forbid this court from at least hearing such a complaint. At the hearing an objection was made to the bill because it was multifarious. No demurrer or other pleading setting up this special defense had been filed. An objection of this character must be specifically taken in the pleadings. If not so, taken, it is deemed to be waived. Oliver v. Piatt, 3 How. 333.
Does the bill make out prima facie a case for equitable relief? There can be no doubt that on a proper showing this court will come to the aid of a minority of stockholders. Dodge v. Woolsey, 18 How. 331. The doctrine is well stated in Waterman on Corporations, (page 578, § 319:)
*614 “A court of equity will enjoin on behalf of the stockholders any improper alienation or disposition of the property other than for corporate purposes, and will restrain the commission of acts which are contrary to law, and tend to the destruction of the franchises as well as the improper management of the business of the corporation, or a wrongful diversion of its funds; and in such cases equity may grant relief at the suit of a single stockholder.”
There are three classes of cases in which stockholders may complain. A minority may object to the business policy pursued by the majority, as tending to injure, perhaps destroy, their interests. In such cases the court will seldom or never interfere. The majority must govern, unless there be a palpable abuse of power or an interference with vested rights. Another class of cases is where the rights and interests of a corporation as a whole are threatened by the action of a third party, an outsider, and the corporate authorities, through inadvertence, negligence, or willfulness, will not move in their defense. In such cases, following Dodge v. Woolsey, supra, the courts of the United States lent a ready ear to the complaint of stockholders who interfered in behalf of the corporate rights. But this indulgence of the courts was greatly abused. Many cases were brought into the United States courts in which the jurisdiction was secured by collusion between a nonresident stockholder and the corporation which itself could not come into this court. This abuse was rebuked in Halves v. Oakland, 104 U. S. 450. The evil was cured by the passage of the ninety-fourth equity rule, consequent on this case. This rule, by its terms, is made applicable to “every bill brought by one or more stockholders in a.corporation, against the corporation and other parties, founded on rights which may properly be asserted by the corporation.” Hawes v. Oakland (page 454) shows that these words, “other parties,” mean “an outsider.” But this case, and the rule consequent upon it, do not apply to cases in which there is a real contest between the stockholder and his corporation. Léo v. Railway Co., 17 Fed. Rep. 273. Hawes v. Oakland draws the distinction broadly and clearly:
“That the vast and increasing proportion of the active business of modern life which is done by corporations should call into exercise the benificent powers and flexible methods of courts of equity is neither to be wondered at nor regretted; and this is specially true of controversies growing out of the relations between the stockholder and the corporation of which he is a member. The exercise of this power in protecting the stockholder against the frauds of the governing body'of directors or trustees, and in preventing their exercise in the name of the corporation of powers which are outside of their charters or articles of association, has been frequent, and is most beneficial, and is undisputed. * * * The case before us goes beyond this.”
After stating that case and the principle of Dodge v. Woolsey, in both of which the action of an outsider was the gravamen of complaint, the court add, (page 454 :)
“This is a very different affair from a controversy between the shareholder of a corporation and the corporation itself, or its managing directors or trustees, or the other shareholders who may be violating his rights, or destroying the property in which he has an interest.”
*615 The bill in this case does not complain of any business policy on the part of the corporation or of the other stockholders; nor does it charge supineness or neglect or collusion with any attack on corporate rights, interests, or privileges, by an outsider. The complainant charges that the president has converted to his own use moneys of the company in which, as a stockholder, complainant has an interest because they were applicable to dividends; that the president misuses his powers, and conducts the business of the corporation to his own purposes; that he controls and uses, in his own private banking account and for his own private purposes, all the funds of the company, against the express provisions of the by-laws; and that in this he is sustained by the officers of the company, who aided him in a peremptory refusal even to consider a motion of inquiry on this subject, made at a general meeting of stockholders. He charges that his own personal rights are infringed, and for this he seeks his remedy. As his rights are similar to those of the other stockholders, he makes them parties to his suit as parties in interest, so that they may take sides as they are advised, and, at least, may be present at the division of the common property, and see that he gets his just share and no more. His prayer is that the money unlawfully converted be returned, and out of it a dividend be declared, and that he get his dividend. This is a suit within the corporation, concerning no one but the stockholders and the company, seeking rights claimed only as a stockholder against the company and the other stockholders. The complainant could not work out his case through the corporation. His bill discloses the fact that there are but five males in this company, —Messrs. McCabe, William Mure, R. D. Mure, Fatman, and himself; that Fatman’s stock has been bought in by the company; that Mr. Mc-Cabe is president, in full control of the business and of the funds of the corporation; that Mr. William Mure is vice president, secretary, and treasurer, and that thus he and Mr. McCabe together control the business, the seal, and the moneys of the company; that these two, at an annual meeting of stockholders provided in its by-laws, peremptorily refused to entertain a resolution of inquiry, and successfully prevented even its introduction. Under these circumstances, it would be absurd to require the complainant to ask these gentlemen to institute in the name of the corporation a suit against Mr. McCabe, involving the grave charges of this suit. Tazewell Co. v. Farmers’ L. & T. Co., 12 Fed. Rep. 752; Heath v. Railway Co., 8 Blatchf. 347.
I am of opinion that this court has jurisdiction over the subject-matter of this bill; that the allegations and form of the bill are sufficient to sustain this jurisdiction; that the cause is not within the mischief or the provisions of rule 94, equity rules; that, if it were, the statements of the bill comply substantially with all the requirements of this rule. He is bona fide a stockholder. There is no suspicion of any collusion to obtain the jurisdiction of this court. He sets forth his effort to obtain relief within the corporation, and his bill is suggestive of the cause of his failure. The demurrers severally are overruled. The defendants have leave to plead or answer over, as they may be advised.