### BARBER v. NATIONAL CARBON CO. et al.

#### (Circuit Court of Appeals, Sixth Circuit. May 4, 1904.)

#### No. 1,143.

1. PATENTS—SUIT FOR INFRINGEMENT—CONSTRUCTION OF PLEA.

A plea to a bill for infringement of a patent alleged that complainant was employed by defendant, a corporation engaged in the manufacture of carbons, as a mechanical engineer, and agreed to give his time, skill, and attention and inventive ability to the service of defendant in and about the cheapening and improving of the process of electroplating, and other processes in the manufacture of carbons; that while so employed, and at defendant's expense, he made the inventions covered by the patent, which consist of a process and machine for electroplating; that such inventions and improvements "belong" to defendant; that "said defendant is entitled to the perpetual use of the same, and that, by reason of the facts hereinbefore stated, * * * complainant is not entitled to any relief prayed for in said bill of complaint, but that said defendant * * * is entitled and has the right to the perpetual use in its business for its purposes" of said inventions. *Held*, that such plea should be construed as a plea of license only, which was all that was required to constitute a defense to the bill.

2. SAME—INFRINGEMENT—IMPLIED LICENSE.

Defendant company, which was a manufacturer of carbons, employed complainant as a mechanical engineer on salary; a part of his duty being to devote his time and skill to the improvement and cheapening of the processes of such manufacture, an essential one of which was electroplating. While so employed, complainant invented a valuable process for electroplating, and a machine for carrying out the same, both of which he patented. Under his directions, special buildings were made at defendant's works to accommodate seven of such machines, six of which were built and installed also under his direction, and a seventh was installed after his employment ended. *Held*, that while defendant did not become the owner of the patent, in the absence of an express agreement to that effect, it had an implied license to use the seven machines, and any replacement of them, together with the patented process, in the manufacture of carbons, so long as it continued in the business.

Appeal from the District Court of the United States for the Northern District of Ohio.

This is a bill alleging infringement of letters patent No. 523,099, issued to the complainant, Clarence M. Barber, July 17, 1894. The patent is both for a process and an apparatus for electroplating.

The defendants filed a plea in the following words and figures:

"In the Circuit Court of the United States, Northern District of Ohio, Eastern Division.

"Clarence M. Barber, Complainant, v. The National Carbon Company, et al., Defendants. In Equity.

"The defendants, the National Carbon Company, Washington H. Lawrence, Benjamin F. Miles, Webb C. Hayes, Harvey E. Hackenberg, John H. Osborn, Myron T. Herrick, and James Parmelee, by protestation, and not acknowledging or confessing all or any part of the matters and things in said bill of complaint mentioned to be true in such manner and form as therein set forth, for their joint and several plea thereto say: Said National Carbon Company is a corporation duly organized and existing, and engaged in the business of manufacturing carbons, and that the other defendants herein are officers and directors of said National Carbon Company, excepting said John H. Osborn.

¶ 2. See Patents, vol. 38, Cent. Dig. §§ 125, 302.

That, in the manufacture of carbons, one of the important processes consists in electroplating, and that an economical apparatus and process for electroplating is very useful and essential to the proper and successful conduct of said business of manufacturing carbons. That in the fall of 1889 the said National Carbon Company, being engaged in such manufacture, and being desirous of cheapening and improving the process of manufacturing, employed the complainant herein, Clarence M. Barber—he claiming at that time to be, and the defendant company employing him by reason of such claim upon his part, a skilled mechanical engineer—and it paid to him a salary for his services of forty dollars per week. These defendants say that said Barber was so employed for the express purpose of giving to the company the benefit and advantages of his mechanical and inventive skill in cheapening and improving, among other processes used by said company, that of electroplating, and to assist the officers and employés in making such inventions. Defendants say that said complainant accepted said employment for the purpose above stated, and agreed to give his time, skill, and attention and inventive ability to the service of said defendant company in and about the cheapening and improving of the process of electroplating and other processes in the manufacture of carbons. That on or about June 1, 1893, this defendant increased the wages of complainant to $3,000 per year, which it paid to him until he severed his connection with the company on or about April, 1894. These defendants further say that said complainant, while so employed, devoted a large part of his time to experiments in the line of devising and perfecting a process for cheapening and improving the system of electroplating; that, for that purpose, he was furnished with all needed assistance by the said carbon company, and with all such material as he desired to use for such purpose; that he was specially employed to devise and perfect processes in the manufacture of carbons, and particularly the process of electroplating, among others; that his skill, ability, and services in that direction were paid for by the defendant carbon company, and his inventive ability, time, and skill had been sold to and purchased by the defendant company, so far as the same pertained to the process of electroplating, and other processes for cheapening and perfecting the manufacture of carbons. These defendants say that said complainant devised the alleged patented invention while in the employment of the said defendant carbon company; that his employment was expressly in the line of such devising, inventing, and improving; that the defendant company furnished the material, tools, and everything necessary to enable him to make such invention; that the same was in the line of his employment, and that the improvements and inventions claimed by the complainant to have been patented, as in the bill set forth, belong to the National Carbon Company; that said defendant is entitled to the perpetual use of the same, and that, by reason of the facts hereinbefore stated, and by reason of the employment of said complainant by the defendant carbon company, and the character of said employment, complainant is not entitled to any relief prayed for in said bill of complaint, but that said defendant carbon company is entitled and has the right to the perpetual use, in its business, for its purposes, of the improvements and claimed inventions of the complainant in his bill set forth. All of which matters and things the defendants aver to be true, and plead the same to said bill, and ask the judgment of the court whether they shall be required to make further answer. The National Carbon Company,

"By W. H. Lawrence, President."

To this the complainant filed a replication. Evidence was taken, and the case heard upon the issue thus presented by the plea, whereupon the court below dismissed the bill, finding that the defendants had not infringed, other than by the use of the process in seven electrotype machines made according to the claims of the patent, and that, under the evidence, the defendants were entitled to a general license to use the process and machine in connection with their business as manufacturers of carbons.

R. S. Taylor, for appellant.

Squire, Sanders & Dempsey, and Frederick P. Fish, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The discussion has largely turned upon the proper interpretation of the plea. The appellant insists that it is a good plea of title to the "inventions" made by Barber, and that an agreement to give one's time, skill, and inventive ability is, in legal effect, an agreement that the fruit of his inventions shall become the property of his employer. By this method of reasoning it is sought to secure a holding that the plea is a good plea of title, notwithstanding the absence of any averment that there was an "agreement" that the company should have title to his inventions, or to any patent that he might obtain for them. In short, a distinction is made between an employment under which one agrees "to use his best efforts and devote his knowledge and skill in devising and making improvements" in an article made by his employer, and an agreement by which the employé "agrees to give his time, skill, and attention and inventive ability" to the service of his employer in and about cheapening and improving the process used in his business. In the case first put, which is precisely the case stated in Hapgood's bill, as reported in Hapgood v. Hewitt, 119 U. S. 226, 229, 7 Sup. Ct. 193, 197, 30 L. Ed. 369, the bill was held bad, the court saying:

"There is nothing set forth in the bill as to any agreement between the corporation and Hewitt that the former was to have the title to his inventions, or to any patent that he might obtain for them. The utmost that can be made out of the allegations is that the corporation was to have a license or right to use the inventions in making plows. It is not averred that anything passed between the parties as to a patent. We are not referred to any case which sustains the view that, on such facts as are alleged in the bill, the title to the invention or patent for it passed."

There is some room for the distinction insisted upon in the decision of District Judge Graham in Hapgood v. Hewitt (C. C.) 11 Fed. 422, and the statement by the Supreme Court in the same case (119 U. S. 233, 7 Sup. Ct. 193, 30 L. Ed. 369) that they concurred in the views of the Circuit Court, although that general statement is followed later by the paragraph set out above.

Whiting v. Graves, 3 Ban. & A. 222, Fed. Cas. No. 17,577, and Wilkens v. Spafford, 3 Ban. & A. 274, Fed. Cas. No. 17,659, both hold that only a license, exclusive or otherwise, according to the terms of agreement, would result from a contract for the inventive ability of a workman. We do not find it important to decide the question thus mooted. If it be concluded that it is not essential that there shall be an express agreement that the employer is to have the title to the inventions of the workman, or to any patent he may obtain for them, if the contract provided that the employer should have the benefit of the employé's inventive faculties, it does not necessarily follow that this plea is to be construed as other than a plea of license. We are not required to assume, as a necessary conclusion from the fact that Barber is averred to have agreed to give the company his "time, services, and inventive ability," that the pleader intends to assert title. The plea is to be construed by looking to all of its averments, and from the whole document determine whether the defense, from the facts stated and the conclusions drawn, is that of license or

title. To stand narrowly upon an inference that the title is claimed from the contract to give the company the benefit of his inventive abilities will be to ignore other facts, and, more than all, to ignore the conclusion which the pleader himself drew from the facts he had stated.

The business of the carbon company was not the making or selling of machinery or mechanism for any purpose. They were engaged in making carbons. The plea states this, and that a part of the process consisted in electroplating such carbons. The plea then avers that Barber agreed to give his "skill, attention, and inventive ability to the service of said defendant company *in and about the cheapening and improving of* the process of electroplating, and other processes in the manufacture of carbons." At most, the employment was for this purpose. Why shall we deduce the conclusion that anything more than a license to use such inventions as he should make in the business of the company would result from an agreement of that kind? But the conclusion which the plea draws from the agreement stated is in accordance with the tendency of the law to preserve to a workman as large a benefit from the results of his intellectual faculties as is consistent with the contract between him and his employer. The plea concludes by claiming that "the defendant is entitled and has the right to the perpetual *use, in its business, and for its purposes,* of the improvements and claimed inventions of the complainant in his bill set forth," etc. The italics are ours.

A right to a use in its business and for its purposes is a license, and is a very different estate from a title to the inventions of the complainant. We think, therefore, the proper construction of the plea is that the pleader is to be understood as setting out a state of facts from which he deduced the claim of a license in behalf of the defendant, and that it was not intended to set up a claim of title to the invention. The establishment of a license was all that was required to constitute a defense, and there was no necessity for pleading more than that. Any other construction would lead to the consequence that the plea would be double, as claiming both the title to the invention and a license to use it. We do not think the plea intends this, but only to lay the ground upon which at least a license would result, and then to put forward the claim of a license as a sufficient defense to the matter of the bill.

This brings us to the scope of the license implied from the circumstances as established by the evidence in support of the plea. The evidence does not show any contract by which Barber was to make inventions or devote his inventive faculties to the service of the carbon company, or any agreement that any inventions should belong to the employer, or any patent which he should obtain thereon. It does show that he was employed because he was a mechanical engineer, and that he was expected to devote his time and service to the cheapening of the processes used by the carbon company. But nothing was said upon the subject of inventions, or the use of his inventive faculties for their benefit, unless an agreement to devote his knowledge, skill and service to the cheapening and improving of the processes used in the factory involves the inventive faculty also.

The precise terms of his employment are somewhat indefinite, but the things which Barber set to do and that he continued to do justify the interpretation the court below put upon the contract of employment. In the course of his employment, Barber made the very valuable invention for which he obtained a patent. That his employers knew of his purpose to apply for a patent, we, from the evidence, think most likely. When he built and established his first machine, he placed thereon plates with an inscription thereon, "Patent Applied For." When this machine was started, the officers and directors were called in to inspect it. It is impossible to believe that these plates escaped their observation. The fact that the plates were thus conspicuously affixed is at least indicative of Barber's intention to protect his invention with a patent, and we can but believe that this fact was also known to his corporation.

The fact of knowledge of Barber's intention to patent his invention, however, is only significant in respect of the scope of the license implied from the fact that he made his invention while in the employment of the carbon company, and that, while so in their employment, six machines were constructed, wholly or partly, for the company, under his personal direction, and without any announcement of any purpose to claim a royalty for their use. The evidence shows that the machine for the use of the process of the patent was one of costly character, occupying very great space. To use them profitably, the factory must be specially constructed upon plans adapted to furnish the space needed. To properly install Barber's machines, special designs for buildings were therefore prepared under Barber's direction, and machines were either built or started according to his plans before he was discharged. In one of defendant's factories there was space especially designed for another of his machines, and after his discharge a seventh machine was built for the place thus prepared.

In Withington-Cooley Co. v. Kinney, 68 Fed. 500, 15 C. C. A. 531, 537, we had the question of the scope of duration of a license implied from service, and said:

"The duration and scope of a license must depend upon the nature of the invention, and the circumstances out of which an implied license must be presumed, and both must at last depend upon the intention of the parties."

In that case the employer was a manufacturer of power presses for sale, and the employment of Kinney had relation to the making of patterns and drawings for such patterns. Kinney made an improved press, and built patterns by which such improved presses were made in the shop for the purpose of supplying his employers' trade. We held, under the circumstances, that Kinney must be presumed to intend that his employer should use his improvement in such new machines as he should make while personally engaged in the business of supplying such machines to the trade. We therefore held that the license, to be presumed, "was not limited by the mere life of the patterns, but was intended as an authority to make and sell power presses embodying Kinney's improvement so long as Babcock should continue in business."

In Solomon v. United States, 137 U. S. 342, 346, 11 Sup. Ct. 88, 89, 34 L. Ed. 667, Clark, while in the employment of the government

and at the expense of the government, devised a self-canceling revenue stamp, which was adopted by the government upon his recommendation. It was held that a perpetual license to make and use that stamp was to be presumed. In that case the principle was said to be this:

"If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer. That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer. Whatever rights as an individual he may have had in and to his inventive powers, and that which they are able to accomplish, he has sold in advance to his employer. So, also, when one is in the employ of another in a certain line of work, and devises an improved method or instrument for doing that work, and uses the property of his employer and the services of other employés to develop and put in practicable form his invention, and explicitly assents to the use by his employer of such invention, a jury or a court trying the facts is warranted in finding that he has so far recognized the obligations of service flowing from employment, and the benefits resulting from his use of the property, and the assistance of the co-employés, of his employer, as to have given to such employer an irrevocable license to use such invention."

In Lane & Bodley v. Locke, 150 U. S. 193, 14 Sup. Ct. 78, 37 L. Ed. 1049, a license to continue to make and use a stop valve in their business was presumed. In Gill v. United States, 160 U. S. 426, 16 Sup. Ct. 322, 40 L. Ed. 480, the cases are all reviewed, the principle upon which they rest held to be an application of the law of estoppel in pais.

In view of the fact that buildings specially designed for the use of Barber's process and apparatus were constructed under his direction, we think the presumption is that he intended to grant to the carbon company the right to use his process in connection with the machines, for which space in the several factories had been specially arranged with his knowledge and under his direction. The right of use presumed is the right to use such number of machines as had been prepared for, and that the right is not limited to the life of the particular machine, but will include replacements so long as the carbon company continues in the manufacture of carbons. The scope of the license therefore includes the seventh machine, constructed after Barber was discharged, to occupy the place prepared for it under Barber's direction. By his conduct, Barber has estopped himself from asserting that the use of his invention to this extent is an infringement of his right as a patentee.

The defendants have therefore not exceeded the license implied from the facts, and the decree is, upon this ground, affirmed, so far as it dismissed the bill of the complainant.

The following is the opinion of the District Court (Wing, District Judge):

A bill has been filed in this case alleging infringement of letters patent No. 523,099, issued to the complainant, Clarence M. Barber, July 17, 1894, for a process and apparatus for electroplating. The defendants filed a plea. To this plea the complainant filed replication. Testimony has been taken by both the complainant and the defendants, and after arguments the cause has been submitted.

The plea sets forth that the invention described and claimed in the patent issued to the complainant was discovered and perfected while the complainant was in the employ of the defendant corporation, the National Carbon Company, and that in the experiments, and the expenditure of the work, labor, material, and money, nothing of any of these contributing factors was used except what belonged to the said defendant the National Carbon Company.

The plea alleges, in terms, that the defendant was engaged in the business of manufacturing carbons; that in such manufacture one of the important processes consists in electroplating, and that an economical apparatus and process for electroplating is very useful and essential to the proper and successful conduct of said business of manufacturing carbons. The plea further alleges as follows: "That in the fall of 1889 the said National Carbon Company, being engaged in such manufacture, and being desirous of cheapening and improving the process of manufacturing, employed the complainant herein, Clarence M. Barber—he claiming at that time to be, and the defendant company employing him by reason of such claim upon his part, a skilled mechanical engineer—and it paid to him a salary for his services of forty dollars per week. These defendants say that said Barber was so employed for the express purpose of giving to the company the benefit and advantages of his mechanical and inventive skill in cheapening and improving, among other processes used by said company, that of electroplating, and to assist the officers and employés in making such inventions. Defendants say that said complainant accepted said employment for the purpose above stated, and agreed to give his time, skill, and attention and inventive ability to the service of said defendant company in and about the cheapening and improving of the process of electroplating, and other processes in the manufacture of carbons. * * * These defendants say that said complainant devised the alleged patented invention while in the employment of the said defendant carbon company; that his employment was expressly in the line of such devising, inventing, and improving: that the defendant company furnished the material, tools, and everything necessary to enable him to make such invention; that the same was in the line of his employment, and that the improvements and inventions claimed by the complainant to have been patented as in the bill set forth belong to the National Carbon Company; that said defendant is entitled to the perpetual use of the same; and that by reason of the facts hereinbefore stated, and by reason of the employment of said complainant by the defendant carbon company, and the character of said employment, complainant is not entitled to any relief prayed for in said bill of complaint, but that said defendant carbon company is entitled and has the right to the perpetual use, in its business, for its purposes, of the improvement and claimed inventions of the complainant in his bill set forth."

The complainant urges that, because it is a fundamental rule in equity pleading that a plea shall present a single point for adjudication, and because this plea sets up more than one defense, it is "bad in law." It is further urged that the proof does not support the charge in the plea that the complainant agreed to give his inventive ability to the service of the defendant company, nor the claim that the invention patented to the complainant belongs to the National Carbon Company, and, further, that the court can consider but this one defense set up in the plea, to wit, the defense of ownership of the patent by the defendant corporation, and that in consequence the decree should be for the complainant. This is, in effect, an objection to the plea for duplicity. The authorities are numerous, and settle the doctrine in equity, that the form of a plea may not be objected to by the complainant after replication filed and proof taken. In the case of William Oliver and Micajah T. Williams et al. v. Robert Piatt, 3 How. 333, 411, 11 L. Ed. 622, the Supreme Court of the United States say: "The objection of multifariousness cannot, as a matter of right, be taken by the parties, except by demurrer or plea or answer; and, if not so taken, it is deemed to be waived. It cannot be insisted upon by the parties even at the hearing in the court below, although it may at any time be taken by the court sua sponte, wherever it is deemed by the court to be necessary or proper to assist it in the due administration of justice. And at so late a period as the hearing, so reluctant is the court to countenance the objection that, if it can get on in the cause to a final decree without serious embarrass-

ment, it will do so, disregarding the fault or error, when it has been acquiesced in by the parties up to that time." To the same effect are the following: Stead's Ex'rs v. Course, 4 Cranch, 403, 412, 2 L. Ed. 660; Hughes v. Blake, 6 Wheat. 453, 472, 5 L. Ed. 303; State of Rhode Island and Providence Plantations v. State of Massachusetts, 14 Pet. 210, 257, 10 L. Ed. 423; John G. Nelson et al. v. John J. Hill et al., 5 How. 127, 131, 12 L. Ed. 81; Farley v. Kittson, 120 U. S. 303, 314, 7 Sup. Ct. 534, 30 L. Ed. 684; Sharon v. Hill (C. C.) 22 Fed. 28, 29; Converse v. Michigan Dairy Co. et al. (C. C.) 45 Fed. 18; Ranger v. Champion Cotton Press Co. et al. (C. C.) 52 Fed. 611.

The proof does not show that the complainant agreed to convey any invention that he might discover during his employment by the defendant corporation, or any patent issued therefor, to such corporation. I think it clear, however, from the proof, that Barber was employed by the defendant corporation, because he was a mechanical engineer, to assist in making improvements in the methods in use by the company in the preparation of its products, although such improvements might amount to invention. The convincing fact in this connection is that Barber himself so interpreted his duties under his contract of employment. He admittedly spent his time, which belonged to the company, in making experiments which led to the invention for which he obtained a patent, and perfected such invention by material of the company, the labor of himself and others paid by the company, and the use of considerable money of the company. To find that he was doing this on his own account would be to attribute to him dishonest motives. The only understanding upon his part of his duties under his contract of employment that would justify the course which he himself states that he pursued would be that he was employed to do the things which he did do.

The bill charges general infringements. There is no proof of infringement by any of the defendants except the use by the defendant corporation, the National Carbon Company, of six machines which the complainant caused to be constructed while in the employ of the company, and with its means and material, and a seventh machine constructed after his discharge, but in a building specially adapted by the complainant for the location of such a machine. The patent is for a process. The facts shown by the proof, under the allegations of the plea, make it clear to me that the defendant the National Carbon Company is entitled to a general license under the patent, so far as the invention as described therein may be used in connection with the manufacture of carbons.

The bill should be dismissed.