## TIN DECORATING CO. OF BALTIMORE v. METAL PACKAGE CORPORATION et al.

District Court, S. D. New York. November 7, 1928.

J. Granville Meyers, of New York City (Charles Neave, Charles S. Jones, and Thomas J. Johnston, all of New York City, of counsel), for plaintiff.

Henry C. Townsend, of New York City (Wm. Houston Kenyon, Theodore S. Kenyon, and Frederick B. Townsend, all of New York City, of counsel), for defendants.

THACHER, District Judge. The circumstances under which the alleged invention described in patent No. 14,393 was conceived and developed are of controlling importance. Prior to his employment with the defendant company, in December, 1910, the patentee George was employed by the American Stopper Company, in whose plant he had seen the hand process of inserting pintles in tin packages. Believing that an automatic machine might be devised to do this work, he constructed, in his own home and in his spare time, a crude model, made of wood whittled out with a penknife. Thereafter George was asked to enter the employ of the defendant, Metal Package Corporation, by its president, Alfred E. Bruns, who had formerly been employed by the stopper company. Before entering the defendant's employ, George told Bruns he had a model of a machine for inserting the pintles automatically. Bruns expressed interest. After commencing work for the defendant, George showed Bruns his model, and left it with him to be shown to a representative of the E. W. Bliss Company, a concern engaged in the construction and sale of automatic machinery. The model was shown to a representative of the Bliss Company, and thereafter drawings were made of an operative machine, which upon defendant's order was constructed and installed in · defendant's plant, in September, 1912. Certain defects

developed in operation which were corrected by changes in construction made in the defendant's machine shop by employees other than George.

The only machine capable of operation which was constructed prior to George's application for a patent was this Bliss machine, and the entire cost of constructing and perfecting it was borne by the defendant. George clearly gave his consent to its construction, and in his patent application, filed after leaving defendant's employ, adopted its construction in all of its mechanical detail as the physical embodiment of his invention. When application for reissue was later made, he made affidavit that his invention, so far as he was aware, had not been brought forward or adopted by any person other than himself, thus in effect claiming the Bliss machine as his own reduction of his invention to practice.

In January, 1914, George left the employ of the defendant, without demanding compensation for the use of the machine or objecting to its use. He testified that, when he originally turned over his model to Bruns, Bruns told him they would talk later about buying his patent. There was no suggestion that he should be paid for a license, and no application for a patent was made until after he left defendant's employ. After leaving defendant's employ he filed an original application, in March, 1914, upon which patent issued November 10, 1914. Although he knew the defendant was still using the Bliss machine, he made no complaint of infringement, nor did he request that he be paid anything for its continued use. In fact, he did nothing until December 4, 1916, when, coincidentally with the sale of his patent to the plaintiff herein, he applied for reissue.

Upon this application the patent reissued November 13, 1917. The plaintiff made no charge of infringement until February 16, 1924. In the meantime, defendant constructed, during 1919 and 1920, three improved automatic machines which embody the invention claimed in the George patent, and at the same time perform other operations in the manufacture of metal packages formerly performed separately. The cost of these improved machines was $35,000. They have since been employed in defendant's plant, and the Bliss machine is used only occasionally, when pressure of work requires. The improved machines were and still are necessary in the conduct of defendant's business, and to meet the demands of its trade, in the development of which its original investment in perfecting the George invention was made.

Aside from other defenses seriously urged, defendant claims a shop right or implied license (to make and use the patented machine in its own business), coextensive in scope with its legitimate business requirements. Plaintiff denies the license, and further says that, if any license is to be implied, it must be limited to the use of the Bliss machine, installed during George's employment and with his consent. Both under the statute (R. S. § 4899; 35 USCA § 48), and by implication from the facts, a license to use the Bliss machine is entirely clear. Wade v. Metcalf, 129 U. S. 202, 9 S. Ct. 271, 32 L. Ed. 661; Dable Grain Shovel Co. v. Flint, 137 U. S. 41, 11 S. Ct. 8, 34 L. Ed. 618; Gill v. U. S., 160 U. S. 426, 16 S. Ct. 322, 40 L. Ed. 480; Blauvelt v. Interior Conduit & Insulation Co. (C. C. A.) 80 F. 906.

Decision therefore turns, not upon the existence, but upon the scope, of the license to be implied. The authorities are in accord that the scope of an implied license is to be determined by the circumstances out of which it arises, including the relation and conduct of the parties in connection with the business in the development of which the employer's money was expended in making the invention operative, and all the other circumstances upon which agreement may be implied or estoppel enforced. Montross v. Mabie (C. C.) 30 F. 234; Anderson v. Eiler, 50 F. 775 (C. C. A. 3rd); Withington-Cooley Mfg. Co. v. Kinney (C. C. A.) 68 F. 500; Barber v. Nat. Carbon Co., 129 F. 370 (C. C. A. 6th), 5 L. R. A. (N. S.) 1154; Schmidt v. Central Foundry Co. (D. C.) 218 F. 466; McKinnon Chain Co. v. American Chain Co. (D. C.) 259 F. 873. And see Peck v. Standard Parts Co., 282 F. 443, 445, 446 (C. C. A. 6th), reversed on other grounds in Standard Parts Co. v. Peck, 264 U. S. 52, 44 S. Ct. 239, 68 L. Ed. 560, 32 A. L. R. 1033.

At one time it was thought that, if the invention pertained to a machine, the shop right extended only to the specific machine or machines made during the employment. Wade v. Metcalf (C. C.) 16 F. 130; Brickill v. Mayor, etc., of New York (C. C.) 7 F. 479. But such authorities have little force to-day.

In Solomons v. U. S., 137 U. S. 342, 11 S. Ct. 88, 34 L. Ed. 667, the right of the employer to use the inventor's patented self-canceling stamp was not limited to the stamps first made, but included the right to continue to make and use these stamps in all the business for which it was developed and invented. In Wiegand v. Dover Mfg. Co. (D. C.) 292 F. 255, the employer's right to use patented

apparatus in manufacturing a patented article pursuant to a patented process was not limited to the machines made while the inventor was in its employ, but was held to be coextensive with the life of the patent and with the needs of the defendant's business in making and selling its product.

In McKinnon Chain Co. v. American Chain Co. (D. C.) 259 F. 873, a patented machine was built at the instance and solicitation of a company engaged in manufacturing chains, and for its use in connection with this business. The patentee having accepted information which was of assistance in developing the machine, with the understanding that a large number of machines of its kind might be required and ordered if the machine proved successful, it was held that the license to use was not confined to the machine delivered but extended to as many more machines as were within the contemplation of the parties. The decision was affirmed in the Circuit Court of Appeals for the Third Circuit (268 F. 353), but upon other grounds. In Barber v. National Carbon Co., 129 F. 370 (C. C. A. 6th), 5 L. R. A. (N. S.) 1154, after considering all of the circumstances bearing upon the intent of the parties, the court concluded that the implied license to use patented machines was not limited to the life of the particular machine, or to the actual number of machines installed during the employment.

■ License in this case is implied from circumstances similar to those involved in Gill v. U. S., supra. The George invention, if any was disclosed in his crude model, was an inadequate conception, which had never been embodied in a machine. It was uncertain whether he would or could obtain a patent. He presented it to his employer, and allowed his employer to risk a substantial investment in constructing machinery and bringing it into practical use, without any suggestion that, if these efforts proved successful, the employer would be required to pay toll for the use of the invention thus perfected. It must be presumed that the investment was made in order to displace hand labor with automatic machinery in so far as that could be done in the conduct of the defendant's business. Obviously this was defendant's only interest in the matter, and there is no suggestion in the evidence that the parties intended to limit the employer's right to the use of a single machine. To have limited the license to the use of a single machine, rather than to the practice of the invention within the reasonable requirements of the master's business, would have placed the trade which both the master

and the servant sought to develop at the mercy of the owner of the patent, as soon as the business had grown, or the art had advanced to such an extent as to make inadequate or obsolete the original mechanical construction which embodied the invention.

In a rapidly developing art, a license to use a particular machine, as distinguished from a license to use the invention, would often be of no practical importance, and of very little value. With continuous mechanical improvement of machinery so often necessary in modern factory practice, a license to use an obsolete machine would be of little value, as the record in this case discloses. It is quite absurd to suppose that the parties themselves would have imposed any such limitation, and none such should be presumed. If the servant intended to restrict the master's right, in simple justice he should have said so before the master's investment was made in perfecting the invention upon which he subsequently procured a patent. The legal inference of license rests, not upon affirmative consent, but upon the failure of the employee to speak under circumstances which in fairness required him to do so. Here, as in most cases, the right to control the master's exercise of the invention is asserted by a competitor who has purchased the patent from the servant.

The sense of justice underlying the equities of such a situation was emphasized by Dickinson, District Judge, in Mix v. National Envelope Co. (D. C.) 244 F. 822. The license to be implied should be coextensive with the employer's business requirements, because the obvious purpose with which invention and investment were made was to satisfy those requirements, and if the scope of the license was to be less than the breadth of this purpose it was the duty of the employee to say so. No formal granting of a license was necessary. Silence, under all the circumstances, was sufficient to give effect to a license commensurate with the obvious purpose of the parties. De Forest Co. v. U. S., 273 U. S. 236, 241, 47 S. Ct. 366 (71 L. Ed. 625).

■ It is, however, the contention of plaintiff that inquiries were made by it of defendant regarding the latter's rights in the invention before purchase of the patent, and that the purchase was made in reliance upon a disclaimer of any rights therein. What was said at the time related to George's title to the patent, not to defendant's shop rights thereunder. Furthermore, defendant's use of the invention was well known to plaintiff, for George, the patentee, told plaintiff's rep-

resentatives of this use, and, it may be inferred, of his acquiescence therein. It is quite impossible to believe that there was any disclaimer of shop rights by defendant, and I find upon the evidence that there was none. The consequence is that defendant prevails upon its defense of implied license under the George patent.

The claims of the Hermani Patent in suit are of doubtful validity as a mere aggregation of old elements, and in any event must be strictly read upon the disclosure of mechanical means contained in the specifications. When thus read, I am satisfied that infringement is not shown.

Accordingly the bill of complaint will be dismissed, with costs.